## JOHN H. WALKER *v.* JESSE W. IVEY.

**Partnership — Action at Law by Partner.**

One partner cannot maintain an action at law against another partner for half the price of the stock of goods owned by the partnership, which has been sold to a third person by the partner sued and the proceeds applied to the payment of a debt due by the partnership to him, when the evidence fails to show that it was withdrawn from the partnership and held by them as tenants in common.[1]

**Partnership Debts — One Partner May Pay.**

One partner may appropriate the firm assets to the payment of any debt due by the firm, either to a third person or to himself.

**Same — Rights and Liabilities of Partners.**

The partner who appropriates the firm assets to the payment of a debt due himself will be liable in a final accounting to his partner, and the other partner has the power to compel an accounting which is the measure of his rights.

---

[1]

A partner cannot bind the firm by an act clearly not within the partnership business; yet he has power to bind the firm in all parts of the business in which it is engaged, and in all transactions, whether direct or incidental, appertaining to its business. And though the partner exceed the terms of the partnership, yet so far as third persons having business with it are concerned, and who are without notice that this power has been exceeded, the co-partners are bound, if the transaction be such that the public may reasonably conclude to be employed in the partnership business, or be incident or appropriate to such business according to the course and usage of carrying it on. Heirn *v.* McClaughlan, 32 Miss. 17.

One partner, by virtue of that relation, is constituted a general agent for his associates, as to all matters within the scope of the partnership dealings,

J. H. Walker and J. W. Ivey were partners in a mercantile business, having a stock of goods estimated at $2,200. They owed some debts and had some debts due them. The firm owed Ivey about $6,000. On March 6, 1876, the stock of goods was sold to one Morgan. The evidence showed that a few days before the sale to Morgan he proposed to Ivey to trade for the stocks of goods if Ivey or the firm would take a tract of land at a price named by him. This proposition was submitted to Walker, who said he did not want to take an interest in the land. Ivey then asked Walker if he was willing for him to take the

and has communicated to him, by virtue of that relation, all authorities necessary for carrying on the partnership, and all such as are usually exercised by partners in that business in which they are engaged. Faler *v.* Jordan, 44 Miss. 283.

Each partner has a specific lien on all the partnership property, both real and personal, for the payment of any balance that may be due him on a settlement of the partnership accounts. Dillworth *v.* Mayfield, 36 Miss. 40.

So each partner has a lien on the partnership effects for the discharge of all the debts due by the partnership. Freeman *v.* Stewart, 41 Miss. 138.

Co-partners are not tenants in common. Their interest in the assets is *sui generis.* The individual interest of a partner can only be ascertained by an accounting after liquidation of the firm debts. Any surplus belongs to the partners, according to their respective interests. Williams *v.* Gage, 49 Miss. 777; Ivy *v.* Walker, 58 Miss. 253.

An individual partner has no interest in partnership property except the surplus after payment of firm debts, and each member has the right to have the firm assets first applied to firm debts. In winding up a partnership, to determine the respective rights of the partners, an account should be taken of the firm liabilities, and its assets should be first applied to their satisfaction. Gaines *v.* Coney, 51 Miss. 323.

Generally, a partner cannot sue his co-partner at law, as respects the joint business, but such action will lie on the written promise of the defendant to pay his proportion of a certain sum of money to carry out the joint adventure. Morgan *v.* Nunes, 54 Miss. 308.

Generally, no action at law can be maintained by one partner against another for a debt arising out of the partnership until there has been a settlement. One may sue the other at law for a balance found due on a partial settlement between them or for a sum which one undertakes to pay the other upon a transaction concerning property which, though partnership assets, they have separated from the general effects; but a sale by two partners composing a firm to one of the partners, who thus becomes a debtor to the firm and not to the other partner separately, is not within the exception. Ivy *v.* Walker, 58 Miss. 253.

Unsettled partnership indebtedness cannot be adjudicated in an action at law. Evans *v.* White, 31 So. 833.

stock of goods at 10 per cent less than invoice price, and Walker agreed to that. Ivey then sold the stock of goods to Morgan and paid him the balance for the land out of his own funds. An invoice of the stock of goods was taken, which amounted to $2,200, and Ivey charged himself with that amount, less 10 per cent, on the books of the firm. Walker brought his suit in the Circuit Court of Marshall county against Ivey on March 5, 1879, for half the price of the stock of goods sold to Morgan. From the time of the sale to Morgan to the time suit was brought Walker made no claim to half the price of the goods and made no demands on Ivey for it. At the time the suit was brought the partnership affairs were still unsettled.

From a verdict and judgment for defendant plaintiff appeals.

APPEALED from Circuit Court, Marshall county, J. W. C. WATSON, Judge.

Affirmed, January 9, 1882.

*Attorneys for appellant, Featherston & Harris*

*Attorneys for appellee, Fant & Fant.*

Brief of Featherston & Harris:

The main question in this case is, was there a contract between Walker, the appellant, and Ivey, the appellee, for the sale of Walker's interest in the stock of goods, owned by the firm of J. W. Ivey & Co., to J. W. Ivey? Did Walker sell his interest in the stock of goods belonging to J. W. Ivey & Co. on the 6th of March, 1876? If he did, the contract declared on must be enforced. This court has said: "A contract for sale and purchase is an agreement for the conveyance of property to another in consideration of a payment actually made or intended to be made. When such contract is made for a specific commodity in use, and susceptible of an immediate delivery, the property is changed immediately on making the bargain. It is not the delivery or the tender of the property, nor the payment, or the tender of payment, of the purchase money which constitutes the sale. The sale is complete as soon as the parties have agreed on the terms. That is, as soon as the vendee says, 'I will give the price demanded,'

and vendor says, 'I will take it,' that rights of both parties are instantly fixed." Ingersoll v. Kendall, 13 S. & M. 615.

In support of the above decision the court cites Potter v. Coward, Meigs Rep. 26; 16 Peters, 315; 2 Johns., 14; Shep. Touch., 224; 2 Com. Cont. 230. The same principle is to be found in Robertson v. Cloud, 47 Miss. 210; and Curtis v. Blair, 26 Miss. 322. To which authorities might be added to an unlimited extent.

We have stated the rule of law as enunciated by this court, and now, does the testimony in the record bring this case within the rule?

There is but little conflict in the testimony. The appellant, Walker, and the appellee, Ivey, were partners in the mercantile business at Mt. Pleasant, and had been for some years. They were equal partners, sharing alike in the profits, and each having put into the firm the same amount of capital. In 1876 one Morgan proposed to Ivey to buy the stock of goods of J. W. Ivey & Co., and proposed to trade a tract of land for the goods. Ivey wanted the tract of land, but the stock of goods belonged to himself and Walker, who composed the firm of J. W. Ivey & Co. Ivey and Morgan talked over the terms of the trade and agreed as to what each would be willing to do, but made no trade. Ivey returned to Mt. Pleasant and told Walker, his partner, the terms of the proposed trade with Morgan for the land in the exchange for the goods. Ivey asked Walker if he wanted an interest in the proposed land. Walker replied that he did not. Walker was unwilling to trade the stock of goods to Morgan for the land. Ivey then said to Walker, "Morgan is asking me a high price for the land, but if you (Walker) will let me have your interest at 10 per cent less than the invoice price I will take it, and make the trade with Morgan for the land myself." To this proposition Walker assented; he told Ivey he could take the stock and make the trade. Ivey did so, and made trade with Morgan on the same day. The invoice price of the goods was $2,231, one-half of which, with 10 per cent off, would be $1,003.95. That is certain which may be readily reduced to a certainty. The record presents the foregoing state of facts. Does it not show clearly and conclusively a proposition by Ivey to purchase from Walker his interest in the stock of goods, and does it not show as clearly an acceptance by Walker of Ivey's proposition at $1,003.95? Was not

this contract for the sale of the gods? Ivey took possession of the goods and sold them the same day to Morgan. Walker states positively that he sold Ivey his interest in the stock. Ivey says he asked Walker if he would let him have the stock at 10 per cent less than the invoice price, not Walker's interest in the stock, but the stock. Suppose he used the language, "the stock," in making the proposition to Walker, as he says he did, and not the language, "your interest," as Walker insists he did, what difference does it make? Half of the stock belonged to Ivey. He certainly did not propose to buy or take his own half interest from Walker. A man does not propose to buy his own property from another. In negotiating and contracting with Walker, he contracted for Walker's interest, and could have contracted for nothing else. That alone was a legitimate subject for contract between him and his partner. The language employed by Ivey in making the proposition, and that employed by Walker in accepting it, means a sale of Walker's interest to Ivey for an agreed price, or it means nothing. Ivey did not propose to buy the whole of a stock of goods in which he then owned one-half interest, but to buy his partner's half interest in the whole stock. A contract of sale was certainly made by them, and the question is, what was sold, what was embraced in the contract? Undoubtedly that which both parties knew Walker had the right to sell, his (Walker's) interest in the stock, nothing more. All contracts must be rationally construed. "The intention of the parties is the soul of the contract. The language used is the chief exponent, but the relations of the parties, the subject matter, and, if necessary, the attendant circumstances, may be looked to." Levy *v.* Dykes, 51 Miss. 506; Pratt *v.* Canton Cotton Co., 51 Miss. 470.

Apply the above rule to the circumstances of this case. Ivey wanted Morgan's land. Walker, his partner, did not want it. Ivey could only get the land from Morgan by trading him the stock of goods for it, but one-half of the goods belonged to Walker, and before making the trade with Morgan it became necessary for him to buy Walker's interest. This he did. But the land was worth more than the stock of goods, and Ivey paid the difference out of his own individual means and took the deed to himself individually. Can a transaction be clearer?

But Ivey now says he understood that he was buying the stock of goods (buying his own interest as well as Walker's), and was

to charge himself on the books of the firm of J. W. Ivey & Co. with the stock and then trade them to Morgan. No such proposition was made to Walker by Ivey. Walker swears that he never heard of such a proposition. Ivey does not contradict him on this point, but says that was the construction of the contract they did make, by himself. This construction of it would be in direct conflict with the terms of the contract, as admitted by both parties. Ivey's acts are the best evidence of his construction of it. He did not charge himself with the stock of goods on the books of the company, and never thought of doing such a thing until after this suit was brought, three years after the sale. This fact shows that it was an afterthought and subterfuge on the part of Ivey. If his construction of it was true, and he believed it to be so, he would have charged himself with the stock on the books of the firm at once, and not have waited three years until he was sued by Walker, and then, in looking around for some unjust ground of defense, have fallen upon this shallow pretext.

The facts of this case all appear in the testimony of Walker, Ivey, and Morgan. That Walker could make a valid, binding, and legal sale of his interest in the stock of goods to his partner is a proposition which will not be doubted at this day. Such a contract will be enforced in a court of law. The validity of the contract does not depend on the pecuniary status of the firm at the time it is made, nor does it depend on the indebtedness of the members to the firm, but stands on the same grounds as any other contract made by two individuals, independent of each other, and is enforced in like manner. Sturgis v. Swift, 32 Miss. 239; Anderson v. Robertson, 32 Miss. 241; Hunt v. Morris, 44 Miss. 314; Lesley v. Robson, 39 Miss. 368; Terry v. Carter, 3 Cush. 168; Collyer on Part., 269, 272, 274, 275, 280, 281; Bonaffe v. Finner, 6 S. & M. 215; Murdock v. McMartin, 12 S. & M. 660; Morgan v. Nunes, 54 Miss. 312.

At the time of the sale by Walker of his interest to Ivey, the firm of J. W. Ivey & Co. was solvent. Walker swears that it was so, and Ivey does not deny it, but simply states that he does not know whether it was or not. He admits that the debts against the firm had all, or nearly all, been paid, and that he had appropriated to his own use and benefit the entire stock of goods in trading it to Morgan for a tract of land which was conveyed to him individually. If the firm was rendered insolvent it was done by

Ivey's appropriating the assets to his own use, and he should not now be allowed to take advantage of his own wrong. But the solvency of the firm has nothing to do with this case; this is not an application to marshal the assets, but a suit on a contract of sale between two partners, and it must be construed and governed by the same rules of law which are applied to other contracts. Ivey does not set up by plea any want of consideration, fraud, or other valid defense, but seem to rely on the stupid ground of one partner's inability to contract with his co-partner, and then enforce the contract in a court of law. See the authorities last above cited.

If we are right in the foregoing views, then the court erred in refusing the charges asked by the plaintiff (appellant) in the Circuit Court as well as in giving those asked by the defendant (appellee). The plaintiff asked nine charges, and all were refused. These charges asked by the plaintiff were drawn from the most approved authorities, and are all applicable to the testimony in the case. They are not abstract principles of law, but every one is applicable to some part of the evidence in the case, and was intended to enlighten the jury in the discharge of its duty in properly disposing of the testimony. We leave the plaintiff's charge to speak for themselves, in view of the testimony.

The first charge given for the defendant is contradictory in its terms, and wholly inapplicable in a case like this, and should have been refused. It affirms that a partner has no interest in the partnership property, except in the remainder after the firm debts have been paid, and that this rule applies whether the firm be solvent or insolvent. If the firm be insolvent, there could be no surplus or property after paying the firm debts in which either partner would have an interest. The only surplus in such a case would be a surplus in the unpaid debts of the firm. The property of the firm would be exhausted. But this charge alleges that one partner has no interest in the firm property which he can sell to another partner, until the partnership has been wound up and the surplus, after paying the firm debts, has been ascertained. This is not the law. We rely on the authorities herein cited, showing that one partner may sell his interest in the firm property to his co-partner, and that such a contract will be held valid and enforced in a court of law, to show the fallacy of the first charge. The principle embodied in the first charge would be good law in a

Court of Chancery, where the question of marshaling the assets of the firm was before the court.

The second charge for the defendant instructs the jury that, although Walker may have sold his interest in the goods to Ivey, still if they were partners, and the business of the firm had not been wound up and closed out, that Walker cannot recover on such contract. We submit that this charge does not propound the law, but what is not law. It assumes that partners in business labor under legal disabilities, and cannot contract with each other in regard to any matter connected with the firm property, so long as the relation of partners exists between them. The jury were told in this charge that the contract sued on was void, on this ground—that they were partners and the business of the firm had not been closed. We again refer to the authorities already cited on this point, if such an absurd position requires an answer.

The first part of the third charge is but a repetition of the first and second charges, and requires no further notice. The latter part of the charge instructs the jury that if the firm of J. W. Ivey & Co. was indebted to Ivey, then Ivey had the right, when he sold the stock to Morgan, to apply the whole proceeds to his own debt against the firm. It is not pretended, or even hinted at in the testimony, that Walker, his partner, ever consented that the proceeds of the stock should be so applied to the debt of one of the partners. This branch of the charge was, therefore, erroneous. Schmidlapp *v.* Currie, 55 Miss. 597.

But the fourth and last charge for the defendant caps the climax of error and injustice. I will copy it in full for fear the original should be lost: "The court charges the jury that in this case the plaintiff *has proved nothing which conduces to establish a state of facts entitling him to recover in an action at law,* and the jury should find for the defendant."

How the court could have sat for hours, hearing the testimony of three witnesses, the speeches of counsel to the jury, and then in giving three other charges to the jury for the defendant, and finally have discovered that there was nothing in the case for the plaintiff, is one of the mysteries of the age. But is the charge true in point of fact? Three witnesses were examined—Walker, the plaintiff; Ivey, the defendant; and Morgan, the purchaser of the stock of goods. Walker proved a contract for the sale of the goods. Ivey in his testimony admitted the contract. The facts

established by Morgan all went to corroborate Walker's evidence. And yet the court says to the jury, there is no testimony in the case which tends to prove, or conduces to prove, a state of facts entitling the plaintiff to recover. The three preceding charges given by the court for the defendant admit that there is testimony in the case, at least, tending to prove a contract. The last charge is in direct conflict with the other three given for the defendant. If the last charge be true, in point of fact, the first three should not have been given, for they were untrue, in point of fact. Has the court the right to weigh the testimony, to estimate it, and finally declare that it is worthless, as in this case? If so, the right of trial by jury is a mere farce; for there was testimony, and a good deal of testimony, in the case. It will not do in this case to say that justice has been done, and that another trial would result in a verdict for the defendant, as in the first trial. There has been no trial of the case by a jury. The jury did not consider the case, but were instructed to find for the defendant. The first was a trial by the court without the consent of the parties. We think the following is the correct rule in such cases: "And we think the correct rule is, that when error of law manifestly appears, the presumption of law is, that it was to the prejudice of the party complaining of it, and that the judgment shall be reversed by reason of it, unless it appear by the record that it did not operate to the injury of the party complaining." Jackson v. Jackson, 28 Miss. 683.

The plaintiff is legally entitled to a trial of his case by a jury, and of this he has been deprived by the action of the court. In such cases new trials should be granted.

Brief of Fant & Fant:

This cause is before this court for the second time (see 58 Miss. 253), and the testimony develops nothing that leads to any other conclusion than the one then declared. We learn from the proof that in March, 1876, Ivey and Walker were merchants and partners at North Mt. Pleasant, Miss., doing a mercantile business under the firm name of J. W. Ivey & Co. That on the 6th day of March, 1876, Ivey, after several interviews with Walker, purchased the stock then on hand, and then sold the same to one Morgan.

The facts being as stated, we submit: First—When Ivey pur-

chased the stock of J. W. Ivey & Co. at invoice prices, say $2,200, less 10 per cent, he became thereby a debtor to the firm to that amount, and this debt from Ivey, together with any other indebtedness due the firm, was firm assets.

But Ivey, according to the testimony, was also a creditor of the firm of J. W. Ivey & Co. at that time, and the firm was largely indebted to other parties besides. Now, a debt due by the firm to one of the partners is a partnership liability, and must be paid like other debts before a division of the surplus among the partners can be forced by judicial proceedings. See 58 Miss. 259.

And Ivey, a member of the firm, had a right to have firm assets (the debt he owed the firm, along with others) applied to the joint debts of the firm (the amount due him, Ivey, as well as others) before Walker, the other partner, could have any separate claim thereto. See Stegall v. Coney & Rice, 51 Miss. 328; Irby v. Graham, 46 Miss. 427-430; Story on Part., §§ 311, 312; Bank v. Carrollton R. R., 11 Wall. 628; Williams v. Gage, 49 Miss. 780.

Second—An individual partner has no other interest or share in the partnership property except the surplus after full payment of the partnership debts and liabilities. 51 Miss. 327-8, above quoted.

What, then, was the interest of Walker here? Evidently the surplus, if any, remaining after payment of partnership debts and liabilities. The evidence is, that the firm owed largely, and that there were debts due it. No settlement of the accounts had taken place. We think the interest of Walker cannot be ascertained or adjudicated in a court of law, but this case is analogous to that of Randle v. Richardson, 53 Miss. 176, where Justice Campbell, in delivering the opinion of the court, uses the language: "This cause should be referred to a master to state an account between the parties on the basis of equality. Each should be credited with his advances to, and be charged with his receipt from, the partnership."

Again, Justice George, in this identical case, 58 Miss. 259, the facts substantially the same, announced the doctrine: "The remedy of a partner to reach this surplus, where no settlement of the accounts has taken place, is by Bill in Equity."

Third—This being a sale of the stock by J. W. Ivey & Co. to J. W. Ivey, it follows that no error was committed by the court below in refusing the several charges of appellant, based as they

are on the idea that Walker sold his interest to Ivey. An instruction which assumes a state of the case that does not exist is erroneous. Bowman *v.* Roberts, 58 Miss. 126.

Instructions, though correct as legal propositions, should be refused where they have no application to the case and their tendency is to mislead the jury.

Fourth—Charges 1, 2, and 3, given for defendant in the court below, in effect that a partner's interest is the surplus remaining after payment of partnership debts and liabilities, and the right of each partner to have the property first applied to joint debts, expound the law correctly; hence the court did not err in permitting defendant to testify over objections of appellant, plaintiff in the court below, as to the condition of the firm, its debts, liabilities, assets, and general condition, as it tended to throw light on the whole transaction between the parties and placed it in its true aspect before the jury.

This view of the case negatives the idea that Ivey had purchased the interest of Walker, agreeing to pay him therefor any specific sum in money, or otherwise, there being outstanding debts and liabilities of the firm, and Ivey a creditor, as it is admitted, to a large amount.

Fifth—The fourth charge for defendant in the court below was: "In this case the plaintiff has proven nothing which conduces to establish a state of facts entitling him to recover in an action at law, and the jury should find for the defendant."

This instruction was right. The evidence of Walker, so far from establishing a sale of his interest to Ivey, tended to prove, and did prove, a sale of the stock by Ivey & Co. to Ivey, and, in view of all the evidence, proved a case in which the plaintiff, in a court of law, at least, had no right to recover, and it but remained for the court to charge the law, which was done.

It was not a withdrawal of the facts from the jury, as condemned by this court in Thrasher *v.* Gillespie, 52 Miss. 840; but it was simply an announcement of what the law was, on a given state of facts. Where the plaintiff's evidence does not conduce to prove any cause of action, our courts possess the power to instruct the jury to find as in case of non-suit, and they ought to find for defendant. Swan *v.* L. L. & Globe Ins. Co., 52 Miss. 704; Whitney *v.* Cook, 53 Miss. 551; Garnett, Admr., *v.* Kirkman, 33 Miss. 389; Frizell *v.* White, 27 Miss. 198.

Statement of the Case.

We submit that the verdict is right, that justice has been done, and that a new trial should not be awarded.

OPINION.—COOPER, J.:

This case has heretofore been before this court and is reported in 58 Miss. 253.

We are unable to perceive any material change in the testimony from that given on the former trial. The contract between the parties was simply that Ivey was to become the owner of the stock of goods, paying therefor the cost thereof, less 10 per cent. There is no evidence whatever of an agreement that the stock was withdrawn from the partnership and held by the former partners as tenants in common at the time of the sale. In the absence of such evidence, the sale gave to Walker no right of action at law against his partner. Ivey was authorized to appropriate the purchase price to the payment of any debt due by the firm, either to a third person or to himself. On a final accounting as to all partnership matters he will be liable to account to his partner touching the distribution of the fund, and the correlative power of the other partner to have such account is the measure of his right.

*Judgment affirmed.*